ANGEL ARROYO RIVERA, Plaintiff and Appellant *v.* GABRIEL ZAVALA, Defendant, and PETRONA CRUZ DE JACOBS, Intervener and Appellee.

No. 4715.   Argued March 20, 1929.—Decided December 11, 1929.

*Ángel Arroyo Rivera,* for plaintiff and appellant.   *Blondet & Campillo,* for the intervener.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Angel Arroyo Rivera instituted in the District Court of San Juan summary foreclosure proceedings against Gabriela Zavala to recover the sum of $679.46, with interest thereon and costs, secured by a mortgage on an urban property situate in Santurce, P. R. Demand for payment was issued, as required by law, and served on the mortgagor by the marshal. The mortgagor having failed to pay, judgment was rendered directing the public sale of the mortgaged premises. The sale was duly advertised and took place on the appointed date, and the property was awarded to the execution creditor.

However, the mortgagor, on whom demand for payment had been served, executed, during the pendency of the proceedings, a deed in which he appears as selling to Petrona Cruz, widow of Jacobs, the same property which had been mortgaged to Arroyo Rivera. The date of that deed is December 13, 1927, and that of the demand for payment is November 16, 1927. The execution creditor does not seem to have had any knowledge of such deed of sale. He learned of the existence of the deed after the public sale, but before the marshal had executed to him any conveyance or given him possession of the property. He moved the court to notify and warn Petrona Cruz that if within a period of ten days she did not pay the amount of the mortgage and release the

property, the cancellation of the record of the sale in her favor would be ordered. The motion was granted accordingly, the said purchaser was notified, and, after more than thirty days had elapsed without her making the payment demanded, the execution creditor applied for and obtained an order and writ of cancellation. Ten days after receiving notice of the demand, Petrona Cruz made application to intervene in the proceedings, and when the order of cancellation was issued she reproduced her petition of intervention, which she filed together with another, wherein she sought to set aside the order of cancellation. The court denied the application to intervene, but vacated the order of cancellation. It is from this latter decision, dated July 13, 1928, that the execution creditor has appealed. It appears that Petrona Cruz appealed from the order refusing the intervention; but there is no showing that she has perfected her appeal.

Foresight is a distinct feature of our Mortgage Law. It would be almost extraordinary if the law permitted a gap to exist, which, in a proceeding where perhaps some principles are sacrificed for the sake of expediency and certainty in the enforcement of mortgage credits, would be the source of a multiplicity of suits. Such would be the case if the mortgagor could freely sell to another, without any risk, the mortgaged property during the pendency of the summary foreclosure proceedings.

To arrive at a proper solution of this problem a strict method of treatment and careful analysis are required.

First, we should consider the meaning of third person (*tercero*) and, of course, establish the difference between the civil third person (*tercero civil*) under the general law and the third person (*tercero hipotecario*) strictly under the Mortgage Law, whose field of operation is confined to the registry of property.

The Supreme Court of Spain in a great number of decisions has held that a person who has knowledge of the existence of a lien or the legal status of an immovable is not really

a third person (*tercero*), with reference to such lien or status. The law does not live in an atmosphere of fiction but in a world of realities. The philosophical basis or ethical element is not sufficient by itself to give life to the law. As the human body needs air in order to breathe, so does the law requires historical and circumstantial elements. This is why the Supreme Court of Spain in the decisions above alluded to has kept in mind the realities of life, and if a person has been perceiving with his physical senses the evident signs of a servitude, he can not, through a legal fiction, become a third person as regards such lien. Apart from that point of view, those decisions show the intimate connection which exists between the Civil Law and its branch the Mortgage Law, notwithstanding the efforts of those who endeavor to make the latter independent of the former. As regards the Civil Law, the Mortgage Law is a minor that will never become of age.

A third person under the Mortgage Law (*tercero hipotecario*) is defined in article 27 thereof as follows:

"Art. 27. For the purposes of this law, a third person shall be considered one who has not been a party to the recorded instrument or contract." *

The apparent simplicity of that definition is dangerous and has given rise to earnest discussions and legal doubts requiring adjudication. But in order to clarify matters at the start, it would seem advisable to point out, first of all, that by those very provisions the Mortgage Law has amply recognized the existence of a superior statute. Thus, the legislator has commenced the quoted article—

"For the purposes of this law . . ."

In other words, without encroaching on the principles of the general civil law, without injuring or destroying them, the Mortgage Law in its definition of *its* "third person"

---

* NOTE.—A more satisfactory translation of this article would seem to be: "For the purposes of this law, one who has not participated in the recorded instrument or contract shall be considered as a third person." (See 62 C. J. 714, sec. 95 and cases cited therein.)

(*tercero hipotecario*) makes mention of a "recorded instrument or contract", which naturally implies matters lying within the special jurisdiction of the registry of property. The article is not limited to persons who are not parties to the instrument or contract, but it refers, in more precise terms, to persons who have not participated in such instrument or contract. The provision does not refer to a "third person" in the sense in which that expression is used in the phrase "prejudice to a third person", but it may also include the third person favored by the registry. Proof of this dual meaning is article 25 of the same statute, which reads as follows:

"Art. 25. Recorded instruments shall not produce any effects as to third persons except from the date of their admission to record."

Therefore, it not only refers to third persons that might be prejudiced but to all third persons.

Whenever the Law intended to establish the effect of the record as *against third persons* it has been explicit and clear. Thus, article 29, in referring to ownership (*dominio*) or any other property right (*derecho real*) recorded, or of which a cautionary notice has been made, states that it "shall be effective against third persons . . ." And in article 35 which deals with prescription, the phrase "nor shall prejudice a third person" is repeated. So also in article 36, which refers to rescissory and resolutory actions, it is stated that they "shall not lie against third persons who have recorded the deeds of their respective interests," which provision is supplemented by those of articles 37 and 38. Article 114 of the same Law, which relates to mortgages constituted to secure credits bearing interest, contains the phrase "as against third persons." Lastly article 389, relative to the use of unrecorded instruments as evidence, provides that they shall not be admitted "if the purpose of the presentation should be to enforce *to the prejudice of a third person a right which should have been recorded.*"

In other provisions of the Mortgage Law the "prejudice" of a third person no longer appears to be exclusively in contemplation, but the concept of third person is also applied for the purpose of favoring at times such person, either expressly or impliedly. Thus we find that article 97, which adverts to the effect of cancellation of records in the registry, prescribes that the cancellation does not *per se* extinguish, as to the parties, the recorded rights, but that it shall produce its full effects *as to third persons,* who by reason thereof may have acquired or recorded some right. Likewise, article 36 already cited also protects a third person; and articles 112, 113 and 116 also contain protective provisions in his favor although the articles make no specific mention of such third person.

Can the purchaser of a property, which is subject to an overdue mortgage according to the registry, be protected as a third person against the effects of the foreclosure of the mortgage? Can such purchaser be considered as a third person within the meaning of article 17 or article 20 of the Mortgage Law, and can the record in his favor have the same legal effect as in an ordinary case? These are the principal questions involved in the case at bar.

Article 17 of the Mortgage Law reads as follows:

"Art. 17. After any deed conveying the ownership or the possession of real property or of property rights therein shall have been recorded, or a cautionary notice thereof entered, no other deed of the same or a prior date conveying or encumbering the ownership of the same real property or property right can be recorded or entered . . .

"If an entry only showing the presentation of a deed conveying ownership or possession shall have been made, no other deed of the character aforementioned can be recorded or a cautionary notice thereof made for a period of 30 days from the day following the date of the entry."

Article 20 provides:

"Art. 20. In order to permit the record or entry of deeds conveying or encumbering the ownership or possession of real property or property rights, the interest of the person executing the same or of the person in whose name the conveyance or encumbrance is made must first appear of record.

"Registrars shall refuse to admit to record such deeds until this requirement shall have been complied with, and they shall be directly responsibly for any damage they may cause a third person by the violation of this provision. .'

"  *          *          *          *          *          *          *  "

It is at once to be noticed that article 17 refers to deeds of the same or earlier date than that of the instrument whose record is involved, and this perhaps relieves us from the necessity of stopping to consider that article. But article 20 can not be so quickly disposed of. However, we may say at the start that this article was designed to meet normal situations and conditions, which do not obtain in cases like the one before us.

In contemplation of the Mortgage Law the purchaser of a mortgaged property subrogates himself in the place and stead of the mortgagor. The Law safeguards certain rights of this new owner—thus, by article 112 the mortgage can not, by operation of law, be extended to the movable property permanently attached to the buildings by the grantee nor to certain improvements and some specific fruits belonging to him; and the exception confirms the rule of the liability of the immovable as to everything not expressly excepted.

The property is liable by virtue of the accessory contract of mortgage, and is answerable quite independently of who its owner may be. This is the principle enacted by article 105 of the Mortgage Law, thus:

"Art. 105. A mortgage directly and immediately subjects the property upon which it is imposed, whoever the possessor of the property may be, to the performance of the obligation for the security of which it may have been constituted."

This same principle appears in the Civil Code (sections 1777 of the Civil Code of Porto Rico and 1876 of the Spanish Code).

A person who purchases a piece of property, which is subject to a recorded mortgage, knows that the immovable has a lien and direct liability, which he must meet at some future time. And if he buys when, according to the registry, the obligation thus secured is demandable, he accepts the consequences and must inevitably fulfill the obligation if he is to retain the immovable, just as his predecessor in title, the mortgagor, would be bound to fulfill it. By virtue of the resulting subrogation, no fact or circumstance affecting the secured obligation can be foreign or unknown to the new owner; the personality of the original debtor has merged into that of the purchaser. Could the latter enjoy the same status as third person available to the purchaser of a property which is free from encumbrances? Could the record in his favor be as protective as in the case of a purchase or acquisition free or exempt from the noted liability? Certainly not.

It can not be claimed that such purchaser had no notice of any extension of the mortgage, or of any modification of any of its stipulations. Anticipating claims of that character, article 144 of the Mortgage Law provides:

"Art. 144. Any act or agreement between the parties tending to modify or to destroy the force of a prior mortgage obligation, such as payment, set-off, respite, an agreement or promise not to demand, novation of the original contract, a compromise or settlement, shall not produce any effect against a third person, unless it be made a matter of record in the registry by means of a new entry, a total or partial cancellation, or a marginal note, as the case may be."

If such respite or extension does not appear of record and the mortgage is due, the subrogated person is bound to fulfill the secured obligation as soon as he acquires the property. He becomes the mortgage debtor; he places himself in the same legal position of his predecessor in interest, and the

record made in his favor has no greater scope than that of the record previously standing in favor of his predecessor in title, for it would be subject to the same contingencies, one of which is its cancellation in pursuance of a foreclosure decree. We might add that if the words "other person", set forth in article 20 of the Mortgage Law, are given their proper legal meaning, they do not apply to a purchaser who has succeeded to the place, obligations and rights of the mortgagor in a case like the present one.

That subrogation takes place in a situation such as prevails herein, is made manifest by the wording of the last paragraph of article 175 of the Regulations for the Execution of the Mortgage Law, which provides as follows: ·

"If during the prosecution of the proceedings the estate or any of the estates mortgaged should pass into the hands of a third person, the latter may, upon establishing the record of his title, apply for permission to examine the record in the office of the clerk of the court, and the court shall grant it, without suspending the course of the proceedings, subsequent proceedings being addressed to him as subrogated to the rights and obligations of his predecessor in interest."

The above provision of the Regulations is in harmony with article 129 of the Mortgage Law, which is as follows:

"Art. 129. If before the creditor shall enforce his claim against the estate mortgaged, the property should pass into the hands of a third possessor, all proceedings prescribed in the foregoing article shall be directed against him, as the person subrogated to the rights of the debtor."

This concept of subrogation, as conveyor of rights and obligations to a person who previously was not concerned with them, is peculiarly a doctrine of the Civil Law, according to which the subrogee is but the continuation of the person into whose place he stepped by virtue of the subrogation. Juridically, the personality of the debtor remains changed.

But there is something more to point out in these cases. The purchaser of an immovable subject to a mortgage, whose

maturity and consequent suability appears from the registry, has notice of that situation; and he continues to have notice of it, because the filing of a complaint in court is a public act. In mortgage foreclosure proceedings, besides such filing, there is the publication of the summons which the law requires and which serves as notice of the proceedings to everybody. Under these circumstances, what can the purchaser of the property claim?

Strictly, a purchaser under those circumstances is only entitled, according to the Mortgage Law, to be shown the record and to intervene within the limits set up for such intervention by that Law and its Regulations.

A weaker case, perhaps, might be that of one who purchases, during a litigation, property subject to a cautionary notice (article 71, Mortgage Law). He is entitled under the law to release the property within ten days from the service of the notice; but if he fails to do so, the record of his ownership will be canceled in the registry.

The case herein might be determined by a strict application of the Mortgage Law. But we may apply other tests, even assuming that the purchaser had a right to attack the foreclosure proceedings, or plead lack of notice of the pendency thereof, or that there is nothing in the Mortgage Law favoring the purchaser at a public sale.

Should the purchaser at a marshal's sale be required to prosecute an action against the person who bought the property *pendente lite* and at a time when the immovable was legally subject to be sold under execution? An affirmative answer would lead to two serious evils—to an absurdity, and to an injustice under the law.

If we consider article 71 of the Mortgage Law, which in a similar situation grants the purchaser *pendente lite* the right to release the property, but with the warning that if he fails to do so within the specified time the record of his ownership shall be canceled in the registry; if we bear mind that section 2 of the Act relating to judgments and the man-

ner of satisfying them (Comp. 1911, section 5296) provides that the order foreclosing a mortgage "shall have all the force and effect of a writ of possession, as between the parties to such suit of foreclosure and any person claiming under the defendant in such suit by any right acquired pending such suit"; and, finally, if we remember that section 36 of the Code of Civil Procedure empowers a court or judge to adopt any process or method of procedure that is suitable for the purpose of enforcing the law, we are bound to arrive at the conclusion that to meet the situation by applying a procedure similar to that prescribed in article 71 of the Mortgage Law, that is, by serving notice on the purchaser and ordering the cancellation of his record in the registry should he fail to release the property within ten days, is a legal and equitable method of procedure.

The petition of the appellant herein is in conformity with the doctrine and the procedure which we have outlined above.

We shall now consider the assignments of error in the present appeal, in the light of the rule above set forth and the principles on which it is based.

The first assignment is directed against the decision, which permitted Petrona Cruz to intervene in the proceedings. In our opinion appellant's contention is well founded. The intervention was improperly allowed in so far as it hindered or stayed the proceedings. Article 175 of the Mortgage Law Regulations is clear and applicable—all claims which may be brought by either the debtor or by third persons in possession and *other persons interested* (italics ours) must be heard in an ordinary action, in which all the claimants' rights are duly safeguarded. Foreclosure proceedings do not end with the marshal's sale, but with the possession of the premises sold, the execution of the deed of sale and its record in the registry of property.

The second assignment of error is as follows:

"The trial court erred in holding as closed the summary fore-closure proceedings had herein and in giving the force of a judicial

decision to a mere ruling of an administrative office of the Spanish government, overruled by judgments of the Supreme Court of Spain."

It is very difficult to justify the decision of the court below on a ruling made by the Directorate of Registries of Spain on April 8, 1893. The fact should be borne in mind that the Mortgage Law for Cuba, Porto Rico and the Philippines, which created the summary foreclosure proceedings, was enacted subsequent to that ruling—the Royal Decree is dated June 14, 1893. Besides, the facts of the case in which the said ruling originated are not similar to those of the case at bar. In the former case, the execution proceeding pursued was that of the Code of Civil Procedure, and there was a complaint in intervention based on title deeds dated prior to the mortgage. One of the parties relied on dominion title, whereas the other party rested on rights derived from possessory title proceedings. The law then in force did not contain a provision similar to that set forth in article 71 of our Mortgage Law, nor anything corresponding to the power created by section 36 of our Code of Civil Procedure. There is in the cited ruling a "finding" (*considerando*) which has some weight, although we do not see that it fully corresponds with the determination made of the case. It is as follows:

"Considering that the Mortgage Law, designed to strengthen land credits, has sought to simplify the judicial proceedings which enable a mortgage creditor to enforce his claim, and, accordingly where the mortgaged property has been conveyed by the mortgagor to a third possessor, the Law, rather than compel the mortgagee to bring a declaratory action against the new owner, regards it as sufficient that demand for payment be made upon the latter and the foreclosure proceedings thereafter continue, either against the mortgagor, in case of disclaimer, or against him and his grantee, should the latter set up an opposition to the execution proceedings."

That ruling, whatever the importance attributed to it in the registries of property, has not as much force as it is thought to possess in the courts of justice. The latter have been and are able to make decisions independent of, and even

contrary to, those emanating from governmental executive or administrative bodies. Thus, in a judgment rendered on December 24, 1904, the Supreme Court of Spain said:

"Considering that the fundamental purpose of the provisions of the Mortgage Law is to enable persons contracting with reference to real property or real rights to know, from the registry, the extent of the rights acquired by them, and on this principle are based all the provisions regulating the matter of legal and voluntary mortgages, according to which the notices of attachment entered in pursuance of orders issued in executory actions can not be placed on the same footing with such mortgages, in so far as concerns restrictions upon the rights of the creditor where the attached property has been conveyed by its owner to a third person—(1) because such parity is not authorized by law; (2) because, since the origin and ground of the attachment are stated in the registry, the entry manifestly informs everybody of the scope, importance and extent of the notice of attachment, which can have no greater effect than to secure the effectiveness of any judgment rendered in the executory action, in conformity with the provisions of the Code of Civil Procedure; (3) because, were a different conclusion reached, a shield would be afforded, not to the right of a third person—amply protected by the constructive notice of the record and its effect—but to the bad faith of the mortgagor, who, through the expediency of a conveyance, might frustrate the rights of the mortgagee, in contravention of the most elementary rules of the executory process; and (4) because such notices of attachments have really a closer similarity with *lis pendens* notices in revendicatory actions, where the person who purchases the property sought to be recorded after the entry of the notice is bound to know of the risk he runs in the event the action is successful."

We find that the second assignment of error must be upheld.

The same conclusion is reached by us with reference to the third assignment, which is as follows:

"The trial court erred in not holding that Petrona Cruz was a purchaser *pendente lite* and that she had constructive notice of the maturity of the mortgage and the summary proceedings instituted for its foreclosure."

From what has been said it is evident that neither the execution creditor in summary foreclosure proceedings nor the purchaser at an execution sale is bound to resort to an ordinary action; and it was error for the lower court to make a contrary ruling, which the appellant herein has assigned as a fourth ground of appeal.

The order of July 13, 1928, appealed from must be reversed.

Mr. Justice Hutchison dissented.